AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information Associated with the Cellular Telephone Assigned Call Number 937-204-2251, That is Stored at Premises Controlled by AT&T

Case No. 3:18 mj 479

MICHAEL J. NEWMAN

FILED
RICHARD W. NAGEL
CLERK OF COURT
2018 JUN 29 AM 10: 41
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV. DAYTON

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).

located in the ___Southern___ District of ___Florida___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(u) | Theft of Firearms from a Licensee |
| 18 U.S.C. 922(j) | Possession of Stolen Firearms |
| 18 U.S.C. 371 | Conspiracy |

The application is based on these facts:
See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John D. Remick-Cook, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/29/18

*Judge's signature*

City and state: Dayton, Ohio

Michael J. Newman, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 937-204-2251, THAT IS STORED AT PREMISES CONTROLLED BY AT&T | Case No. 3:18 mj 479<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, John D. Remick-Cook, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephones assigned call number 937-204-2251, ("the SUBJECT PHONE"), that is stored at premises controlled by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since March of 2015. As a part of my training with the ATF, I graduated from the Federal Law Enforcement Training Center, Criminal Investigator School, located in Glynco, Georgia. I also graduated from the ATF Special Agent

Basic Training Academy, located in Glynco, Georgia, in February of 2016. In my career with ATF, I have been assigned to and worked with the Cleveland Police Department's Gang Impact Unit and am currently assigned to an Organized Crime Task Force which investigates criminal organizations in the Southern Judicial District of Ohio. Prior to my employment with ATF, I was a member of the Metropolitan Police Department in Washington D.C. where I served as a member of the Third District Crime Suppression Team, Narcotics and Special Investigations Division's Gun Recovery Unit and as an Investigator with the Criminal Investigations Division. I was employed in that capacity from December of 2008 to March of 2015. I have received additional training in several areas of law enforcement, including but not limited to Gang investigations, Narcotics interdiction and investigation and firearms interdiction and investigation. I am also a graduate of the University of New Hampshire where I received two Bachelor degrees in Sociology and Justice Studies in 2008.

    3.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

    4.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(u) (theft of firearms from a licensee); 18 U.S.C. § 922(j) (possession of stolen firearms); and 18 U.S.C. § 371 (conspiracy to commit the same), have been committed, are being committed, and will be committed by Dion Dansby Jr., Lamont Hancock, Michael Sanford, and others. There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. On Sunday June 17, 2018, the ATF received a report that approximately 50 handguns were stolen during a break in at Target World, a Federal Firearms Licensee (FFL), located at 2300 Kemper Rd., Sharonville, Ohio.

6. At approximately 3:17 a.m., on June 17, 2018, five suspects were captured on surveillance video inside of Target World. Analysis of the crime scene showed that the suspects arrived in at least one vehicle which they parked on the east side of the McSwain Carpet & Floors (hereafter referred to as McSwain,) located at 2430 Kemper Rd., Sharonville, Ohio.

7. Surveillance footage recovered from Flavor Producers, located at 2429 Kemper Rd., Sharonville, Ohio 45241, showed two vehicles pulling into the parking area of McSwain shortly before the break in. The footage then showed two vehicles leave the parking lot shortly after the break in. The vehicles arrived together, but left at slightly different times. One of the vehicles can be seen turning off its headlights as it exited the McSwain parking lot.

8. Surveillance footage from McSwain showed a vehicle parked on the east side of the building, which then backed out of the camera's view shortly at around the time of the break in. The video then showed three suspects jumping a fence to gain access to the McSwain parking lot. Once the suspects gained access to the parking lot, they were able to travel across a set of train tracks, then an open field, bringing them to the east side of the Target World building.

9. Surveillance footage from Target World showed five suspects walking on the west side of the building lot and appears to show the group evaluating a door on the side of the building. The footage shows the suspects talking and, after a short time, the suspects travel northbound on the west side of the building toward the rear entrance to the range.

3

10. Surveillance footage from inside of the pistol range at Target World shows one of the suspects, who is wearing a bandanna-type face covering, shorts, and a hooded sweatshirt with a design on both the front and rear, walk from the back of the range to the front. The suspect appears to scout the inside of the store by walking back and forth on the range. The suspect then appears to call for his co-conspirators to come to the front of the range, which they do. The footage shows that the remaining four suspects are wearing long pants and hooded sweatshirts with the hoods up and all are wearing facial coverings. Each individual is carrying a backpack or duffle-type bag.

11. Surveillance video shows that the suspects attempt to break a widow in the range using a hammer, but are unable to do so because the window is ballistic rated. The suspects then begin kicking the locked door, which leads from the range area to the retail portion of the store. After kicking the door several times, the suspects gain entry to the retail store and make entry. All five suspects then run over to the pistol case and break the glass on several cases. All five suspects can be seen reaching into the display cases and placing handguns into the bags that they brought along with them.

12. Within a matter of moments, the audible alarm sounded in the store and all five suspects fled the store the same way that they entered. Surveillance footage captured the suspects running along the west wall, then eastbound into the field toward McSwain's.

13. Officers from the Sharonville Police Department arrived on the scene within moments and discovered that a break in had occurred. The officers processed the crime scene and were able to determine the suspect's flight path prior to reviewing surveillance footage because the suspects dropped multiple firearms outside of the building as they fled. Specifically, firearms and sales tags were recovered in the Target World parking lot, the field between Target

World and McSwain's, the train tracks that run between Target World and McSwain's, and in McSwain's parking lot.

14. Responding officers also discovered a blood trail that traveled across McSwain's parking lot and blood smear on the side of McSwain's building and the chain link fence that the suspects jumped. The blood was collected from the scene and submitted to the Hamilton County Crime Lab (HCCL) for analysis.

15. On June 18, SA Chris Reed was contacted by an ATF CI who advised that he/she had been contacted by a target (SUSPECT-1) in a separate ongoing ATF investigation. SUSPECT-1 in that investigation, who is a convicted felon, indicated that he had the ability to broker/middle-man a deal for the CI to purchase 10 firearms from and unidentified individual. During the exchange of phone calls, SUSPECT-1 reportedly sent the CI a text/message photograph of 10 handguns. SUSPECT-1 further advised the CI that the person selling the firearms wanted $4,200.00 for all (10) handguns. The CI advised SUSPECT-1 he/she would purchase firearms the following day at approximately 1300 hours. The 10 firearms were suspected to have been stolen from a recent federal firearm licensee theft in the Cincinnati and Dayton, Ohio area.

16. On June 19, 2018, with the use of an ATF Undercover Agent (UC) and CI, ATF conducted a controlled purchase of 10 firearms from associates of SUSPECT-1 for the purchase price of $4,200.00. Prior to the purchase of 10 firearms, ATF conducted surveillance of SUSPECT-1 from his known residence traveling as a passenger in a Buick sedan (VEHICLE-1). Surveillance units observed an unidentified black male (SUSPECT-2) as the driver of VEHICLE-1.

17. Later on June 19, 2018, at approximately 1242 hours, ATF surveillance units observed SUSPECT-1 and SUSPECT-2 in VEHICLE-1 arrive and park at Harvard Boulevard (LOCATION-1) (GPS Coordinates: 39.772647, -84.213210). Surveillance Units observed SUSPECT-1 and SUSPECT-2 exit VEHICLE-1. A short time later surveillance units observed SUSPECT-1, SUSPECT-2, an unidentified black male (SUSPECT-3) and another unidentified black male (SUSPECT-4) walk to and get in a Chrysler 300 (VEHICLE-2) and left LOCATION-1.

18. Later on June 19, 2018, at approximately 1244 hours, ATF surveillance units observed VEHICLE-2 pull into the parking lot of 500 Salem Avenue (LOCATION-2) (GPS Coordinates: 39.767629, -84.210586). Surveillance units observed the front passenger (SUSPECT-3) of VEHICLE-2 exit VEHICLE-2 and enter LOCATION-2. A short time later surveillance units observed SUSPECT-3 return to VEHICLE-2 and exit the parking lot of LOCATION-2.

19. Later on June 19, 2018, at approximately 1255 hours, surveillance units observed VEHICLE-2 pull into the parking lot of 2813 Germantown Street (LOCATION-3) (GPS Coordinates: 39.738712, -84.240427). Upon arrival, the ATF CI received a phone call from SUSPECT-1. SUSPECT-1 attempted to have the ATF CI meet at LOCATION-3 for the controlled purchase of 10 handguns with negative results of moving the deal location.

20. On June 19, 2018 at approximately 1304 hours, surveillance units observed SUSPECT-1 arrive in VEHICLE-2 to the parking lot of 2166 South Edwin C Moses Boulevard (LOCATION-4) (GPS Coordinates: 39.732043, -84.208225). Surveillance units observed VEHICLE-2 park next to a Chevy Impala (VEHICLE-3), and near a Cadillac sedan (VEHICLE-4). Surveillance units observed the driver (SUSPECT-2) of VEHICLE-2 exit the vehicle and

later have a conversation with an unidentified black male (SUSPECT-5), who was the driver of VEHICLE-4. Surveillance units observed the right rear passenger (SUSPECT-4) of VEHICLE-2 exit the vehicle and later retrieve a duffel bag from VEHICLE-3.

21. On June 19, 2018, at approximately 1331 hours, surveillance units observed SUSPECT-4 walk with the red and black duffle bag in hand from VEHICLE-3 and enter the ATF UC and CI's vehicle. ATF UC and CI met SUSPECT-4 and conducted the controlled purchase of 10 firearms. At the conclusion of the controlled purchase of firearms, SUSPECT-1 approached the UC and CI vehicle and had a conversation about future firearm purchases. Once the deal was completed surveillance units observed SUSPECT-1, SUSPECT-2, and SUSPECT-4 return to VEHICLE-2. Surveillance units also observed SUSPECT-5 return to the driver seat of VEHICLE-4.

22. On June 19, 2018 at approximately 1341 surveillance, units observed VEHICLE-2, VEHICLE-3 and VEHICLE-4 leave LOCATION-4. Surveillance units tailed VEHICLE-3 and VEHICLE-4 to another location at 2027 Nicholas Road, LOCATION-5 (GPS Coordinates: 39.73619, -84.22873), where both vehicles met up and the drivers got out and had a quick conversation before exiting the parking lot of LOCATION-5.

23. On June 19, 2018 at approximately 1346 hours surveillance units observed VEHICLE-3 make a turn onto Palmerston Avenue, and travel by 3205 Palmerston Avenue (LOCATION-6) (GPS Coordinates: 39.730343, -84.241943). Surveillance units caught up with VEHICLE-3 and at approximately the same time observed three unidentified black males walking from the woods carrying backpacks.

24. Later on June 19, 2018, after the controlled purchase of firearms, ATF S/A Reed conducted records check of the serial numbers of the firearms purchased. A records check

revealed that multiple firearms purchased during the transaction on June 19, 2018, matched the serial numbers of firearms stolen from Target World on June 17, 2017.

25. Following the transaction on June 19, 2018, your Affiant reviewed the surveillance footage from Target World and noted that one of the suspects present during the break in was carrying a red and black duffle bag at the time of the break in.

26. On or about June 22, 2018, ATF Special Agent Timur Housum and ATF Task Force Officer (TFO) Joe Ruchti conducted an interview with ATF Source of Information (SOI) and were told the following:

    a. SOI stated that on Monday, June 18, 2018, he/she had gone to the 2926 Ralliston Ave. Dayton, Ohio 45417, which was a hangout area for him/her and associates. The SOI identified this location as "the clubhouse" and it will hereafter be referred to as such. While at the clubhouse, the SOI was told through conversation about a gun store being "hit." SOI identified five suspects as the ones that had broken into the gun store by the following nicknames: "Lil D", "Lil Mike", Lamont, Joshua, and "Mook." SOI stated he/she she was upset that they did not ask permission to do the burglary. SOI informed, S/A Housum that he/she was the tactical advisor/enforcer for the group and that his/her associates would come for advice on how to "do stuff" to include burglaries/robberies. SOI stated that while at the clubhouse, he/she observed a red duffle bag with approximately 9-10 firearms in it. SOI stated he/she was told that each suspect that had a part in the burglary had grabbed two firearms each. SOI stated that the group gave him/her a 9mm Desert Eagle pistol from the red duffle bag.

    b. SOI stated that he/she had sold the 9mm Desert Eagle for approximately $400.00, and had a photo of the firearm on his/her phone. S/A Housum reviewed the photo and observed a black Desert Eagle with "IWI" insignia on the handle of the pistol. A review of the

8

theft loss report from Target World revealed that an Israel Weapons Industry-IWI, 9mm Desert Eagle pistol, bearing serial number 47300814 was taken during the theft of firearms at Target World.

      c.      SOI went on to state that he/she assisted in a deal of approximately 8-9 firearms in the area of 2166 South Edwin C. Moses Boulevard, Dayton, Ohio, with two individuals. SOI stated that on June 19, 2018, he/she had received a phone call from an associate by the name of "TONE." In that phone call "TONE" stated that he needed SOI to pull into "ACES", later identified as Club Aces located near 2100 Nicholas Road, Dayton Ohio, because he (TONE), "had found some dudes to buy these guns." SOI and "TONE" met in the parking lot of Club Aces. "TONE" had parked his blue van and proceeded to hop into SOI's vehicle carrying what the SOI described as the same red duffle bag seen at the clubhouse the previous day with approximately 9-10 firearms in it. SOI stated "TONE" had wanted SOI there to watch "his back." "TONE" parked his blue van at the parking lot of Club Aces, and hopped in SOI's vehicle. SOI and "TONE" met up with an unknown black male in the parking lot of 2166 S. Edwin C. Moses Blvd. The unknown black male proceeded to grab the red duffle bag of firearms from SOI's vehicle and initiated the sale of firearms with two suspects. Once the deal was completed, SOI observed the unknown black male come back to his/her vehicle and hand "TONE" some cash. SOI stated "TONE" told him/her that he had sold the firearms for $1,200.00. After the deal was completed, SOI stated he/she dropped "TONE" off at his vehicle at Club Aces. "TONE" stated he wanted SOI to follow him back to the clubhouse because "TONE" had money on him.

    27.    Later on June 22, 2018, S/A Housum and S/A Reed met with ATF SOI to identify associates. Upon review of pictures, SOI identified the following suspects: "Lil D" was

9

identified by the SOI as Dion Dansby Jr., (black male, DOB: 04/XX/2000); "Lamont" was identified by the SOI as Lamont Hancock (black male, DOB: 04/XX/1999); Mook was identified by the SOI as Miyauhn Vinyard (black male, DOB: 11/XX/1999). Based on a physical description of "Mike" provided by the SOI, as well as open source database information and a photograph identified by the SOI as depicting "Mike," your Affiant believes based on this information that "Mike" is being Michael Sanford (black male, DOB: 11/XX/1994).

28. The SOI stated that Dansby Jr.'s cell phone number is 937-204-2251 (SUBJECT PHONE). The SOI stated that Hancock's cell phone number is 937-637-9473. The SOI stated that "Mike's"(Michael Sanford) cell phone number is 937-856-6960.

29. Based on the above, I am aware that the theft from Target World referred to earlier in this affidavit involved multiple members and vehicles. Based on my training and experience as a law enforcement officer, I know that co-conspirators are frequently in phone contact with each other, passing information back and forth about timing and information about the particular locations involved in the offense, including ingress and egress routes and locations where getaway vehicles will be located.

30. I am also aware that such theft operations generally involve pre-operation surveillance. Specifically, the individuals planning the theft will typically visit the location at which they plan to conduct their theft prior to the theft's planned execution date/time in order to become familiar with the location's layout, entry and egress points, and the surrounding area (in order to plan, e.g., primary and secondary routes out of the area). During such surveillance, which can take place several days in advance of the execution date, the individuals conducting surveillance are likely to utilize their cell phones to describe the scene to other conspirators or ask questions regarding the operation.

31. Moreover, in this particular instance, SUSPECT-1 utilized a cell phone to coordinate the sale of multiple stolen firearms to the ATF CI and the SOI used a cellphone to communicate with "TONE" regarding the sale. Moreover, the circumstances surrounding the theft and transaction of the stolen firearms demonstrate the involvement of multiple parties and occurred at multiple locations during the time frame outlined above. Accordingly, cell-site location information for the SUBJECT PHONE is therefore likely to reveal the location of the individuals involved in the subject offenses during the time period of events surrounding those offenses, as described herein.

32. Information obtained during the investigation indicates that Cricket, a subsidiary of AT&T, provides cellular service for the SUBJECT PHONE.

33. Accordingly, based on the information above, I submit that there is probable cause to believe that violations of 18 U.S.C. § 922(u), 18 U.S.C. § 922(j), and 18 U.S.C. § 371, have been committed, that the SUBJECT PHONE was used in connection with those violations during the time periods outlined herein and in Attachment B, and that there is probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes as further described in Attachment B.

34. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the

towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

     35. Based on my training and experience, I know that AT&T can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

     36. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

12

## AUTHORIZATION REQUEST

37. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

38. I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

39. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

_____
John D. Remick-Cook
Special Agent
ATF

Subscribed and sworn to before me on this 29th day of June, 2018.

_____
MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

13

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 937-204-2251, ("the Account"), that are stored at premises controlled by AT&T ("the Provider"), headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **June 10, 2018, through June 20, 2018**:

   a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

 b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

  i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

  ii. information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 922(u); 18 U.S.C. § 922(j); and 18 U.S.C. § 371; involving Dion Dansby Jr., Lamont Hancock, Michael Sanford, and others during the period of June 10, 2018, to June 20, 2018.